AO 91 (REV.5/85) Criminal Complaint

AUSA Chris Niewoehner   (312) 353-6117
AUSA Sheri Mecklenburg  (312) 469-6030

## UNITED STATES DISTRICT COURT

__NORTHERN__ DISTRICT OF __ILLINOIS, EASTERN DIVISION__

UNITED STATES OF AMERICA

v.

RONALD COLLINS a/k/a Randy Wesley, a/k/a Tony

**MAGISTRATE JUDGE COX**
**CRIMINAL COMPLAINT**
**07CR 830**

CASE NUMBER:

FILED DEC 13 2007 MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. From on or about __February 5, 2004, through on or about February 12, 2004__ in __Cook__ County, in the __Northern__ District of __Illinois__ and elsewhere, defendant did,

conspire knowingly and intentionally with Pablo Vasquez Duarte, Aldabeto Betancourt, Gregory Smith, Gerald Johnson and others known and unknown to possess with intent to distribute and to distribute mixtures containing at least 5 kilograms of cocaine, a Schedule II narcotic drug controlled substance, in violation of 21 U.S.C. § 841(a)(1).

in violation of Title __21 U.S.C. § 846__

I further state that I am a __Special Agent, Drug Enforcement Administration__ and that
                                    Official Title
this complaint is based on the following facts:

### SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof: __X__ Yes ___ No

_____
Signature of Complainant
Luke McConnell, Special Agent, DEA

Sworn to before me and subscribed in my presence,

December 13, 2007    9:08 AM        at    Chicago, Illinois
Date                                       City and State

Susan E. Cox, U.S. MAGISTRATE JUDGE          _____
Name & Title of Judicial Officer              Signature of Judicial Officer

STATE OF ILLINOIS        )
                         ) SS
COUNTY OF COOK           )

## AFFIDAVIT

I, Luke McConnell, being duly sworn, depose and state as follows:

1. I am a Special Agent with the Drug Enforcement Administration ("DEA"), United States Department of Justice. I have been so employed for over three years, and am presently assigned to the Chicago (Illinois) Field Division. In connection with my official DEA duties, I investigate criminal violations of the Controlled Substances Act. I have received specialized training in the enforcement of federal narcotics laws. Prior to that time, I was employed for three years with United States Border Patrol, which also provided specialized training in the enforcement of federal narcotics laws. My training and experience has involved, among other things, (a) the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealment of proceeds of drug trafficking; (b) surveillance; and (c) analysis of documentary and physical evidence.

2. I am familiar with and have participated in all of the normal methods of investigation, including, but not limited to, visual surveillance, the general questioning of witnesses, the use of informants, undercover operations, the use of pen registers and the interception of wire communications. I am familiar with drug trafficker's methods of operation including, the distribution, storage, and transportation of narcotics and the collection of money which represents the proceeds of narcotics trafficking, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

1

3. The information set forth in this Affidavit has come to me through my personal knowledge and review of records, as well as conversations with other local, state and federal law enforcement officers who provided some of the information in support of this Criminal Complaint. The information in this Affidavit includes the results of physical surveillance, and interviews.

4. This Affidavit is made for the limited purpose of establishing probable cause in support of a Criminal Complaint charging RONALD COLLINS a/k/a Randy Wesley a/k/a Tony, with a violation of Title 21, United States Code, Section 846.

5. Because this Affidavit is for the limited purposes of establishing probable cause to support a Criminal Complaint, it contains only a summary of the relevant facts. I have not included each and every fact known to me concerning the entities, individuals and events described in this Affidavit. When I describe a statement made by another individual, I provide a summary of the statement, and not a verbatim recitation of the statement.

## Background of Investigation

6. In about May of 2003, DEA agents began to investigate a cocaine trafficking and money laundering organization that imported cocaine from Mexico to Chicago, Illinois. The investigation revealed that Pablo Vasquez Duarte, a/k/a Angel Lopez a/k/a Tupo ("Duarte")[1] was the local leader of a group of conspirators based in Chicago. Duarte arranged for the distribution of cocaine in Chicago, Detroit, and Indianapolis, among other places. Duarte is also responsible for the collection of drug proceeds from the sale of cocaine.

---

[1] Duarte was charged in an indictment in the Northern District of Illinois with conspiracy to distribute and to possess with intent to distribute cocaine (04 CR 200). Duarte is currently a fugitive in that case.

2

7. As part of the investigation, DEA sought and received authorization to utilize TIII wiretaps on various phones associated with Duarte and members of his organization. On January 26, 2004, U.S. District Court Chief Judge Charles P. Kocoras, Northern District of Illinois, signed an order authorizing, for a period of thirty days, the interception of wire communications to and from a cellular telephone ("Target Cell Phone Four") which was utilized by Duarte and his associates.

## February 5, 2004

8. On February 5, 2004, at approximately 10:39 a.m., Duarte made a call on Target Cell Phone Four (Call #85) to an individual subsequently identified as RONALD COLLINS.[2] In that call, Duarte stated, "I'm on my way for today, thirty-one, it's thirty one, okay, one picture is free for you." [Duarte was going to deliver 31 kilograms of cocaine to COLLINS and would give one of the kilograms to COLLINS for no charge]. Later in the call, Duarte stated, "Okay, uh, you, I'm on my way for to...today, tomorrow . . . you ready today, tomorrow?" COLLINS replied, "Yeah." Duarte asked "Today?" COLLINS replied, "Yeah, and I'm gonna send money back [COLLINS would send the money he owed to Duarte for the cocaine back with the person that Duarte was sending to Collins in Detroit] with him too." Duarte later stated, "Okay, I'll call

---

[2] Throughout this affidavit, I will provide my interpretations in brackets of various intercepted conversations. These interpretations are based on my training and experience as a DEA agent, as well as my discussions with law enforcement agents who have first-hand knowledge of the investigation, the content and context of the conversations, prior and subsequent conversations between the subjects, and my conversations with other law enforcement officers experienced in narcotics investigations.

The times listed for these calls are approximate. The summaries of the calls do not include all potentially criminal calls intercepted during the period of interception, or all statements or topics covered during the course of the intercepted conversations. The quotations provided are derived from draft transcripts of the conversations and may not represent the entire conversation that occurred between the identified individuals.

In addition, based on my training and experience, I am aware that narcotics traffickers typically use coded words and phrases to describe drug-related activities, and I have become familiar with particular terms and phrases used as codes by narcotics traffickers.

you, thirty one, one picture for you free, you pay me thirty for eighteen [Duarte was telling COLLINS that he would pay Duarte for 30 kilograms of cocaine at $18,000 per kilogram]." COLLINS later asked "All right, they coming today?" and Duarte responded "Okay, I call you."

9. On February 5, 2004, at approximately 12:15 p.m., Duarte received an incoming call on Target Cell Phone Four (Call #87) from COLLINS. In that call, Duarte stated, "I'm on my way tomorrow, okay? [Duarte would arrange to deliver the 31 kilograms of cocaine to COLLINS the next day]" COLLINS responded, "A'right, tomorrow, a'right."

### February 6, 2004

10. On February 6, 2004, at approximately 10:02 a.m., Duarte made an outgoing call on Target Cell Phone Four (Call #104) to COLLINS. In that call, COLLINS asked Duarte when he was coming. Duarte replied, "Today". COLLINS stated Okay and that he will be waiting. In Call #104, I believe Duarte was telling COLLINS that Duarte was going to arrange to deliver cocaine to COLLINS in Detroit that day.

11. At approximately 10:30 a.m.,[3] agents established surveillance of the house located at 6342 S. Kildare, Chicago, Illinois and the surrounding area. Based on surveillances conducted by DEA agents and officers, as well as a search conducted on February 23, 2004, (which found approximately $600,000 in drug proceeds in the house and 6 kilograms of cocaine in a purple van parked outside the house), 6342 S. Kildare was used as a stash house for narcotics and narcotics proceeds.

---

[3] All times are in Central Standard Time.

12.     At approximately 1:05 p.m., law enforcement agents observed Aldabeto Betancourt, a/k/a Rolando Cruz ("Betancourt")[4], drive to the alley area of 6342 S. Kildare in a blue Ford Focus (the "blue Focus") and park in front of the garage. Betancourt subsequently was seen changing the license plates on the blue Focus so that it had a temporary Illinois registration number.

13.     At approximately 1:51 p.m., law enforcement agents observed Betancourt enter the blue Focus and drive to the front of 6342 S. Kildare. The blue Focus subsequently left the area as agents surveilled the car. Surveillance was then temporarily lost, but the blue Focus was then seen again at approximately 2:11 PM in the parking lot of a convenience store. Shortly thereafter, surveillance observed the blue Focus enter a Mobil Gas Station, where it was joined approximately two minutes later by a white Dodge Intrepid (the "white Intrepid") driven by a single man. Surveillance then observed the driver of the blue Focus and white Intrepid meet and engage in what appeared to be conversation. Agents observed the driver of the white Intrepid hand to the driver of the Focus what appeared to be a small two-way radio.

14.     At approximately 2:25 p.m., agents observed the blue Focus and the white Intrepid leave the gas station together. The two cars were followed as they drove from Chicago to Detroit.

15.     At approximately 2:37 p.m., Duarte received an incoming call on Target Cell Phone Four (Call #110) from COLLINS. In that call, COLLINS asked Duarte, "What's up?" Duarte responded, "It's in the way, it's in the street right now." COLLINS asked, "How long, what

---

[4] Betancourt was charged in an indictment and subsequently pleaded guilty in the Northern District of Illinois with conspiracy to distribute and to possess with intent to distribute cocaine (04 CR 200).

5

time?" Duarte stated, "Uh, maybe in three hours and a half." COLLINS asked, "Three hours and a half from now?" Duarte replied, "Yeah." COLLINS asked, "So about seven o'clock?" Duarte stated, "Yeah." COLLINS then asked "My time?" Duarte answered "Yeah, yeah, you time maybe, it's six thirty." At the end of the call Duarte stated, "Okay, hey, thirty one okay?" COLLINS responded, "A'right."

16. In call #110, I believe Duarte informed COLLINS that the car containing the cocaine had left Chicago (i.e., "...it's in the street right now.") and that the car would arrive in Detroit at approximately 6:30 EST. Duarte further informed COLLINS that he was going to receive 31 kilograms of cocaine (i.e., "Okay, hey, thirty one okay.")

17. At approximately 5:06 p.m., Duarte placed an outgoing call on Target Cell Phone Four (Call #114) to COLLINS. In that call, COLLINS asked, "Hey, what time you gonna be here?" Duarte responded, "Okay, hold on, one second, okay." In the background, Duarte could be heard talking as if on another phone and saying "Hey Maestro, how, how much time for you, over to get with the black guy? Huh? How much time to get there? ... About forty five minutes?. Duarte then stated to COLLINS, "...forty five minutes."

18. In call #114, I believe that COLLINS wanted to know when the car carrying the cocaine would arrive in Detroit. Duarte then used another phone to call Betancourt, who used the nickname "Maestro," to determine when Betancourt would arrive in Detroit.

19. At approximately 6:13 p.m., Duarte received an incoming phone call on Target Cell Phone Four (Call #117) from COLLINS. Duarte told COLLINS to hold on, and again spoke in the background as if on another phone, saying "Hey cousin, how much time for that? Twenty minutes? Oh okay, everything well, right? Okay, okay bye. Okay bye." Duarte then informed

6

COLLINS, "twenty minutes, twenty minutes more, okay."

20. In call #117, I believe Duarte again contacted one of the men traveling to Detroit with the cocaine to determine how long it would take them to reach Detroit.

21. At approximately 7:15 p.m., law enforcement agents observed the white Intrepid and the blue Focus enter a warehouse located at 18523 Schoolcraft, Detroit, Michigan (the "Warehouse") through a large overhead door at the rear of the building.

22. At approximately 7:45 p.m., law enforcement agents observed the blue Focus and white Intrepid leave the Warehouse. Law enforcement agents then followed the two cars as they drove back to the Chicago area.

23. Also at approximately 7:45 p.m., law enforcement agents observed Gregory Smith and Gerald Johnson leave the Warehouse. Smith and Johnson got into separate cars, and were stopped by Michigan State Police officers at approximately 7:55 p.m. Both Smith and Johnson were detained for some time.

24. Agents subsequently obtained and executed a search warrant for the Warehouse. In the course of that search, agents found approximately 46 kilogram-sized packages of cocaine in the trunk of a red Pontiac Firebird.

25. At approximately 11:43 p.m., Duarte received a call on Target Cell Phone Four (Call #133) from COLLINS. During the course of the conversation, COLLINS asked DUARTE, if he talked to his guy. DUARTE then asked if everything is alright. COLLINS responded, "we got fucked up. They roughed the place." DUARTE then handed the phone to another individual who appeared to speak English better than DUARTE. The unknown male then asked COLLINS, "What's up, man?" COLLINS responded, "Tell him [DUARTE] we fucked up, that the police

7

hit us." The unknown male then asked "Where?" COLLINS then asked, "Your guys all right? Because they might be following them." In the background of the intercepted call, it sounded like DUARTE made a call on another phone. In the background, DUARTE asked if everything is okay, if they have been stopped, and to look to see if anyone is following them. The unknown male then informed COLLINS that "they" [the blue Focus and the Intrepid] are in Chicago. COLLINS then stated he did want to talk on his phone anymore and asked that DUARTE not call the beepers anymore and to give him a new number. The unknown male then proceeded to give COLLINS the telephone number 773-343-9843.

### Events After February 6, 2004

26. After Call #133, no further conversations involving Duarte were intercepted on Target Cell Phone Four. It appeared that Duarte stopped using that telephone. On February 11, 2004, the government received authorization to intercept phone calls made on 773-343-9843 ("Target Cell Phone Six") from Acting Chief Judge James F. Holderman in the Northern District of Illinois.

27. On February 12, 2004, at approximately 4:50 p.m., Duarte received an incoming call on Target Cell Phone Six (Call #86) from COLLINS. In that call, COLLINS stated, "They [law enforcement] on to what you all doing, man. I'm telling ya'll what's going on, ya'll not listening." COLLINS went on to say that "What happened is, soon as your guys [Duarte's drug couriers] left out of there [left the Warehouse], two of your guy walked out of there, they rushed the other two guys [law enforcement agents stopped Gregory Smith and Gerald Johnson] in the alley. They cut the locks off the building, and went in there and got the stuff [46 kilograms of cocaine]. The DEA did it." COLLINS said that "I mean, I don't give a fuck who it is, one of

8

them niggers ain't right [COLLINS thought that one of Duarte's couriers was working with law enforcement agents]. I don't care who it is, they, I lost, I lost two men with this bullshit [referring to the stop of Smith and Johnson]. You know what I mean. But it, I'm just saying something's happening down here, from your way. I don't know what it is, but like I say, something's happening down there from your way, I now lost two guys from that bullshit, and, and...and me and Tupo go too long back [Individual A and Duarte have been in the narcotic selling/buying business for a long period of time] so I have to believe each other."

### Statements of Smith and Johnson

28.  Gregory Smith has been convicted in the Northern District of Illinois for conspiracy to knowingly and intentionally possess with intent to distribute and to distribute in excess of five kilograms of mixtures containing cocaine based on the events described above. Smith received a reduction in his sentence because he agreed to cooperate with the government. Smith informed law enforcement agents that he had helped a man whom he knew as "Tony" distribute cocaine at the Warehouse since about the Winter of 2003. Smith subsequently was shown a photographic lineup of eight photos and identified a picture of COLLINS as the person whom he knew as Tony. Smith also listened to a portion of Call #96, an outgoing call from Target Phone 4, made on February 12, 2004, at 5:30 p.m., which lasted for 1 minute, 46 seconds, and identified the voice of the individual speaking with Duarte on that call as the person whom he knew as Tony, and had identified in the photo array as COLLINS. The individual whom Smith identified as COLLINS in Call #96 told Duarte words to the effect that it was Duarte's people who caused the DEA to arrest Smith and Johnson and, when Duarte expressed doubt that the arrest was caused by his people, COLLINS and Duarte bet $100,000 as to whose people

caused the DEA to arrest Smith and Johnson. Smith further said that COLLINS first took Smith to the Warehouse on one occasion when two men delivered approximately twenty kilograms of cocaine to COLLINS and Smith from a secret compartment in the car they drove. On a subsequent occasion, Smith and Johnson went to the Warehouse to receive another approximately 15-kilogram delivery of cocaine, which they stored at the Warehouse. Smith said that he was paid by COLLINS for helping to receive the shipments of cocaine. On February 6, 2004, Smith said that he went to the warehouse with Johnson, that he met with two Hispanic men who took approximately 31 kilograms of cocaine from a secret compartment in a blue car with Illinois license plates, which Smith stored in the trunk of a red car that was at the Warehouse. Law enforcement agents have found Smith to be a credible witness and have been able to corroborate many of the events he described from either Johnson or other sources.

29. Gerald Johnson has pleaded guilty in the Northern District of Illinois (04 CR 200) for conspiracy to knowingly and intentionally possess with intent to distribute and to distribute in excess of five kilograms of mixtures containing cocaine based on the events described above. Johnson spoke with law enforcement agents in an attempt to reduce his sentence, although at this time Johnson has no cooperation agreement or other agreement with the government for reduction of his sentence. Johnson told law enforcement agents that he had been helping an individual named "Tony" distribute cocaine from the Warehouse since approximately 1999. Johnson told law enforcement agents that on February 6, 2004, he had been directed to go to the Warehouse by Tony, and make an exchange of drugs for money. Johnson gave an account of the events at the Warehouse on February 6, 2004, which were similar to the account provided to law enforcement agents by Smith, in that Johnson stated that he took a box which he assumed

10

contained drugs from the two Hispanic individuals, and gave them a package which he assumed contained money. Johnson further stated that he slid the box to Smith and that Smith placed the box in the red car. Johnson was shown a photographic lineup of eight photos, and Johnson identified the photo of COLLINS as being "Tony." Johnson subsequently admitted that Tony was his uncle and that he has known Tony all of his life, by Tony's real name of Randy Wesley.

30. A law enforcement agent has listened to Call #96, the same telephone call in which Smith identified COLLINS' by his voice as a participant, and the law enforcement agent also has listened to all the telephone calls described in this Affidavit, and has determined that the person whom Smith identified by voice as COLLINS is the same person whose voice is on the other telephone calls described in this Affidavit.

31. Therefore, based on the foregoing, I believe that RONALD COLLINS conspired with Pablo Duarte, Aldabeto Betancourt, Gregory Smith, Gerald Johnson, and others known and unknown to knowingly possess with intent to distribute and to distribute a controlled substance, namely in excess of 5 kilograms of mixtures containing cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of 21 U.S.C. § 841(a)(1); all in violation of 21 U.S.C. § 846.

FURTHER AFFIANT SAYETH NOT.

_____
LUKE McCONNELL
Special Agent
Drug Enforcement Administration

Sworn to before me this __13th__ day of December 2007.

_____
HON. SUSAN E. COX
U.S. Magistrate Judge
Northern District of Illinois